## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION

**IN RE**

**JEFFERY LEE TAULBEE**                                    **CASE NO. 15-52073**
**IDA MAE TAULBEE**                                                  **CHAPTER 13**

**DEBTORS**

### MEMORANDUM OPINION AND ORDER IMPOSING SANCTIONS
### AGAINST DEBTORS' FORMER ATTORNEY

This matter is before the Court on Orders to Show Cause [ECF Nos. 85, 104] directed to

Kentucky attorney Charlotte Darlene Johnson, Esq., formerly counsel for Debtors (hereafter

"Counsel").  The Court conducted an evidentiary hearing on February 25, 2020, at which

Counsel and Debtor Ida Mae Taulbee offered live testimony.  Prior to the hearing, the Court

received joint stipulations [ECF No. 156] from Counsel, the Chapter 13 Trustee ("Trustee"), and

Debtors, with attached stipulated exhibits [ECF Nos. 156-1 to 156-11].  The record also contains

other filings from Counsel, Trustee, and Debtors, which are discussed herein.  Orders from other

cases involving Counsel (*In re Bellamy*, Ch. 13 Case No. 14-51404 (Bankr. E.D. Ky.); *In re

Bush*, Ch. 7 Case No. 14-51370 (Bankr. E.D. Ky.)) bear on this matter as well, as discussed

below.  Based on the record presented, the Court makes the following findings of fact and

conclusions of law and will impose sanctions against Counsel, including prohibiting her from

practice in the bankruptcy courts in the Eastern District of Kentucky.

### FACTS

Debtors filed this chapter 13 case through Counsel on October 23, 2015.  Their plan was

confirmed on February 18, 2016.  Counsel agreed to accept a fee of $3,000 for representing

Debtors in the case, received $485 from Debtors prepetition, and was paid the balance through Debtors' confirmed plan.

In the fall of 2018, Ms. Taulbee told Counsel that Debtors would not be able to continue making their chapter 13 plan payments because Ms. Taulbee no longer was employed. Counsel advised that she could convert Debtors' case to one under chapter 7 for a $500 fee.

On October 5, 2018, Trustee moved to dismiss Debtors' case for not making plan payments. On or about December 18, 2018, Counsel and Trustee agreed to an order resolving the motion to dismiss. It gave Debtors 90 days to become current on their delinquent payments and imposed a one-year probation period with respect to making timely future payments. [ECF No. 53 (the "Probation Order")].[1] Thus, Counsel represented to Trustee (in seeking her agreement to the Probation Order) and to the Court (in requesting the Probation Order's entry) that Debtors sought to continue performing under their chapter 13 plan—even though Counsel knew Debtors could not and did not intend to perform.

In October 2018 and January 2019, Debtors made two payments totaling $500 to Counsel so that she would convert their case and provide post-conversion services for them. Debtors fully paid Counsel by January 4, 2019. Counsel explained that she planned to file an amended fee disclosure post-conversion to report the additional compensation. Counsel never filed an amended disclosure, nor did she ever successfully convert Debtors' case.

On January 28, 2019, Trustee advised the Court that Debtors failed to comply with the Probation Order. The Court dismissed their case the next day and closed it on April 3, 2019. On

---

[1] "Probation orders are a common way to address delinquent payments in this District. A debtor is given a limited period to make up the late payments. A debtor must also make all payments on time for the next twelve months. Failure to do either will result in dismissal of the case." *In re Denny*, Ch. 13 Case No. 15-51918, 2018 Bankr. LEXIS 1118, at *31 (Bankr. E.D. Ky. April 12, 2018).

April 9, 2019, Counsel moved to reopen Debtors' case so that it could be converted, and she paid

the $235 filing fee for that motion.  The Court granted the motion shortly thereafter.  But

Counsel did not act.  The Court entered an order on May 14 stating that Debtors' case would be

re-closed if they did not take appropriate action to convert it within 14 days.  Counsel filed a

Notice of Voluntary Conversion for Debtors later that same day; however, the Court set aside the

Notice as deficient because, procedurally, the dismissal order had to be vacated before the

conversion could be effective.  Counsel did not take further action on Debtors' behalf before the

end of the 14-day period and the Court re-closed Debtors' case on June 3.

Almost three months later—and eight months after she received payment to convert

Debtors' case—Counsel again moved to set aside the dismissal on Debtors' behalf on August 30,

2019.  The motion requested that Debtors' case be reopened and that they be granted 30 days to

engage a new attorney.  However, because a second $235 reopening fee was not paid, the Court

denied the motion on September 3.  The order denying the motion was served by mail on

Debtors and electronically on Counsel via the Court's CM/ECF system.

After she received a copy of the September 3 order, Ms. Taulbee went to Counsel's office

and they discussed the status of Debtors' case.  They also met in Counsel's office sometime in

August 2019.  Counsel asserts that she told Ms. Taulbee when they met in August that Counsel

was retiring from her bankruptcy practice and would be unable to represent Debtors after the

case was converted.  Conversely, Ms. Taulbee testified that she did not know of Counsel's

retirement until October 17.  Counsel presents no evidence to establish that she attempted to

refund the $500 conversion fee to Debtors and transition Debtors' file to another lawyer.

Instead, as discussed below, the evidence reveals that Debtors continued to seek assistance from

Counsel after August 2019, and that Counsel continued attempting to provide it.

Shortly before September 25, 2019, Counsel prepared (but did not file) a "Motion to Set Aside Dismissal, Reopen Case, Waive the Fee and Allow Debtors 30 Days to Obtain New Counsel" in Debtors' case along with a proposed order.  The motion was essentially the same as the August 30 motion with the added request that the Court waive the reopening fee.  Counsel's office sent these papers to another attorney in Hazard, Kentucky.  After making certain changes to the electronic signatures on the motion and its Certificate of Service, the attorney mailed the papers to the Bankruptcy Court Clerk's office on Counsel's behalf.  On October 2, the Clerk's office received and file-stamped the paper copy of the motion.  On October 10, the Court entered a deficiency order because the motion did not comply with the Court's Administrative Procedures Manual and required that the errors be corrected within seven days.[2]  Counsel was served with notice of the deficiency order via the CM/ECF system, and paper copies were mailed to Counsel at her office address and to Debtors.

After receiving the deficiency order, Ms. Taulbee contacted Counsel's office and they met on October 17, 2019.  When Ms. Taulbee showed Counsel the deficiency order, Counsel—who had stopped checking the email address she registered to use with the CM/ECF system—advised that Debtors needed to take action to respond to the deficiency order and explained what needed to be done.  Counsel also informed Ms. Taulbee that Debtors could seek another attorney or file the paperwork themselves.  She explained that the required documents needed to be postmarked that day.  Counsel gave Ms. Taulbee two motions that day: a "Motion to Set Aside Dismissal, Reopen Case, Waive the Fee and Allow Conversion of Debtors Chapter 13 Case to

---

[2] The Court entered the deficiency order because the motion at issue (a) was filed in paper form, and a motion for permission to file by means other than the Court's CM/ECF system must accompany paper filings; and (b) lacked a handwritten signature, and motions filed in paper format must bear an original signature.

4

Chapter 7" and a "Motion for Permission to File a Motion by a Means Other Than Electronically." [ECF Nos. 156-8 and 156-9.] Ms. Taulbee testified that Counsel prepared these motions for Debtors to sign, file, and serve, while Counsel testified that they were offered to Ms. Taulbee as templates for Debtors to use. These motions were never filed or served, and no other pleadings were filed to address the October 10 deficiency order.

On October 23, 2019, the Court entered an Order expressly directing Counsel to appear on November 7, 2019, and "show cause why sanctions should not issue for [C]ounsel's failure to timely correct the deficiency." [ECF No. 85 (the "Show Cause Order").] The Show Cause Order was served electronically on Counsel via the CM/ECF system and on Debtors by mail.

On October 25, 2019, Trustee moved to reopen Debtors' case and sent the motion by email to Counsel at two email addresses, including her registered CM/ECF address. Counsel, who had left for a trip that day, viewed the email on her phone and did not open the attachment but responded to Trustee: "What am I supposed to have done now?" [ECF No. 156-10 at 2.] Trustee paid the $235 reopening fee and the case was reopened on October 30, 2019.[3]

Counsel returned home on November 3, 2019, several days before the scheduled show cause hearing. Debtors appeared at the November 7 hearing, as did Trustee and an attorney for the Office of the United States Trustee ("UST"). However, Counsel did not. Instead, she had her attorney, Cary B. Howard, Jr., appear on her behalf. He advised the Court that Counsel was participating in hearings that day in Perry County (Kentucky) District Court and, for that reason, she could not appear for the show cause hearing. Mr. Howard was not appearing as counsel for

---

[3] On November 4, 2019, Trustee filed a "Motion for Authorization to Communicate With Debtors Directly and Motion to Shorten Notice" and a "Motion for Order Authorizing Debtors' Counsel to Provide Debtors' Contact Information to Trustee and Motion to Shorten Notice," both set for hearing on November 7 along with the hearing on the Show Cause Order. Counsel remained the attorney of record for Debtors as of the November 7 hearing.

Debtors and, therefore, they were unrepresented at the November 7 hearing.  Immediately

following the November 7 hearing, the Taulbees, counsel for UST, and Trustee met, at which

time Ms. Taulbee presented the unsigned motions Counsel gave her on October 17.  Ms. Taulbee

signed the motions at that time to authenticate them.

On November 12, 2019, the Court entered another Order to Show Cause [ECF No. 104

(the "Second Show Cause Order")].  It contained findings supporting the Court's determination

that Counsel was in contempt of Court and that civil contempt sanctions were warranted.  It also

directed Counsel to take certain actions and set another show cause hearing for November 21.[4]

On November 18, 2019, Counsel filed a Response to the Second Show Cause Order [ECF

No. 120 (the "Response")].  It states that Counsel understood upon her return home on

November 3 that the Court had set a show cause hearing on November 7.  It also states that

Counsel had a conflict on her schedule for that date due to hearings she needed to attend in Perry

District Court and, thus, asked her attorney to appear on her behalf.  The Response also states, in

pertinent part:

> The undersigned does not deny that the notice of voluntary conversion should
> have been filed in a timely fashion.  She admits that her work suffered specifically
> during the period from late October 2018 when her Mother's condition began to
> deteriorate rapidly until her death at the end of April 2019 as well as for some
> period of time after her passing.  As her only surviving child, the undersigned
> lived with and bore the full responsibility for her Mother's care and end of life
> decisions[.]
>
> The undersigned recognizes that it has taken her some time to become recognize
> [*sic*] that her age and other physical and emotional stressors have had a
> detrimental impact on her overall physical and mental abilities[.]

---

[4] On November 12, 2019, James D. Lyon, Esq. entered his appearance on Debtors' behalf and moved the Court to
substitute him for Counsel as Debtors' attorney.  Mr. Lyon also moved to set aside the order of dismissal and moved
for the entry of a hardship discharge for Debtors. The Court granted these motions.  Mr. Lyon represented Debtors
pro bono.

[Response at ¶ 10.]

After the November 21 hearing concluded, at which Counsel appeared and offered an unsworn explanation of her conduct in this case, the Court issued an order that day (a) setting an evidentiary hearing to assess whether Counsel's conduct warranted sanctions, (b) giving the parties time to take pre-hearing discovery, (c) requiring the parties to file joint stipulations, (d) permitting Counsel to file a supplement to her November 18 Response, and (e) requiring Counsel to reimburse Trustee the fee paid to reopen Debtors' case, and to file a Notice of Compliance, within seven days.  Notably, Counsel did not timely comply with this final requirement.  She did not reimburse Trustee and tender the Notice of Compliance until January 16, 2020.

The Court received evidence on February 25, 2020, including testimony from Ms. Taulbee and Counsel, consistent with the facts related above—except with regard to Counsel's failure to attend the November 7 hearing on the Show Cause Order.  As explained below, Counsel changed her story in a manner the Court does not find credible.  Specific testimony from Counsel is discussed below in connection with the Court's evaluation of her professional conduct as counsel for Debtors and as an officer of the court.

## JURISDICTION

The Court has subject matter over this proceeding and venue is proper.  28 U.S.C. §§ 1334, 1408, 1409.  This is a core proceeding regarding which the Court may enter a final order.  28 U.S.C. § 157(b)(2)(A).

## ANALYSIS

The Court concludes that Ms. Johnson has violated several Bankruptcy Code provisions, Federal and Local Rules of Bankruptcy Procedure, and ethical rules imposed by the Kentucky

Rules of Professional Conduct.  The Court is authorized to issue sanctions as a result of her

misconduct.  Under the circumstances, severe sanctions are warranted.

## I.      11 U.S.C. § 526

A debtor's attorney is considered a "debt relief agency" under the Bankruptcy Code. 11

U.S.C. § 101(12A); *see also Milavetz, Gallop & Milavetz v. United States*, 559 U.S. 229, 235-36

(2010).  Section 526[5] sets forth restrictions on a debtor's attorney's conduct.  Counsel violated

two subsections of § 526.

First, an attorney shall not "fail to perform any service that [the attorney] informed an

assisted person … it would provide in connection with a case or proceeding under this title[.]"

11 U.S.C. § 526(a)(1).  Counsel told Ms. Taulbee that she would convert Debtors case from

chapter 7 to chapter 13 upon the payment of $500.  Debtors paid Counsel that amount by January

4, 2019.  Counsel did not convert Debtors' case as she said she would before the case was

dismissed on January 29.  Indeed, Counsel admits that she did not take appropriate and timely

action on Debtors' behalf; her Response to the Second Show Cause Order states: "The

undersigned does not deny that the notice of voluntary conversion should have been filed in a

timely fashion."  [Response at ¶ 10.g."]  Yet in the 11 months following payment to her for this

service until she ceased serving as Debtors' counsel, Counsel never successfully converted

Debtors' case.  Conversion is a standard procedure for a lawyer representing individual

consumer debtors.  Counsel herself testified that it is a "simple" procedure.  Accordingly,

Counsel failed to comply with § 526(a)(1).  This failure to act also implicates applicable ethical

---

[5] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.
References to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule    ."  References to the Local
Rules of the United States Bankruptcy Court for the Eastern District of Kentucky appear as "Local Rule   ."

rules identified below regarding diligence and competence, and evinces that Counsel failed to abide by her clients' wishes regarding the scope of their representation in bankruptcy.

Second, § 526(a)(2) prohibits a debtor's attorney from making

> any statement … in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such [attorney] to be untrue or misleading.

11 U.S.C. § 526(a)(2). Counsel violated § 526(a)(2) by executing the Probation Order on Debtors' behalf. At the time she executed that order, Counsel knew that Ms. Taulbee had lost her job and that Debtors could not make continued monthly payments under their chapter 13 plan, let alone catch up on the payments they already had missed. In fact, when she signed and tendered the Probation Order to the Court in December 2018, Counsel already had taken funds from Debtors as partial payment for the conversion of their case.

By signing the Probation Order and tendering it to the Court under these circumstances, Counsel made a misleading representation that Debtors intended to continue performing in their chapter 13 case when Debtors and Counsel agreed on a different course of action that did not involve continued payments by Debtors. By filing this document, Counsel misled the Court and Trustee regarding Debtors' intent and the proper purpose of the Probation Order. As Counsel testified, she executed the Probation Order on Debtors' behalf to delay the dismissal of the case until Debtors paid Counsel the full fee to convert it. The Court finds, based on Counsel's testimony at the evidentiary hearing, that she knew that Debtors did not intend to perform under their chapter 13 plan when she signed the Probation Order and tendered it to the Court. Counsel intentionally violated § 526(a)(2). Further, Counsel did not satisfy her ethical duties of candor to the tribunal and to Trustee and did not pursue a meritorious course of action on Debtors' behalf.

## II.      11 U.S.C. § 329, Bankruptcy Rule 2016, and Local Rule 2016-2

A debtor's attorney must disclose compensation "paid or agreed to be paid ... for services rendered or to be rendered in contemplation of or in connection with" a bankruptcy case. 11 U.S.C. § 329(a); *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 720 (6th Cir. 2001) ("An attorney in a bankruptcy case has an affirmative duty to disclose fully and completely all fee arrangements and payments."). An initial fee disclosure typically must be filed within 14 days following the bankruptcy filing and "[a] supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed." FED. R. BANKR. P. 2016(b). Local Rule 2016-2(e), applicable to attorneys representing debtors in chapter 13 cases, provides: "Any compensation … sought in excess of the presumptively reasonable fee … must be requested by filing an itemized application for compensation under FRBP 2016 and KYEB LBR 2016-1 and certifying that the services for which compensation is sought are in addition to the services required to be performed" as part of the presumptively reasonable fee. KYEB LBR 2016-2(e).

Counsel accepted $500 from Debtors in two payments received by January 4, 2019. She never filed a supplemental fee disclosure stating that she received these funds and setting forth the additional services to be performed. Therefore, Counsel violated § 329, Bankruptcy Rule 2016, and Local Rule 2016-2.

## III.     Bankruptcy Rule 9011

Counsel made several representations to the Court that violated Bankruptcy Rule 9011. This Rule provides that papers filed with a bankruptcy court must be signed, and that an attorney's signature on papers presented to the court (or the attorney's later advocacy in support of those positions) amounts to a certification "that, to the best of the attorney's knowledge,

Case 15-52073-tnw    Doc 175    Filed 04/02/20    Entered 04/02/20 13:11:48    Desc Main
Document      Page 11 of 21


information, and belief, formed after an inquiry reasonable under the circumstances, it is not being presented for any improper purpose…" and "the allegations and other factual contentions have evidentiary support…." FED. R. BANKR. P. 9011(b)(1), (3).

First, Counsel signed the Probation Order and filed it with the Court, and thereby represented that the Probation Order was not being presented for an improper purpose. But Counsel knew that Debtors could not and would not comply with the Probation Order. By her conduct, Counsel violated Bankruptcy Rule 9011, and her conduct was not objectively reasonable under the circumstances.

Second, Counsel misrepresented to the Court that she did not attend the November 7, 2019 show cause hearing because she had a scheduling conflict with matters proceeding in Perry District Court. Her attorney, Mr. Howard, made that representation in open court at the November 7 hearing when he appeared in her absence.[6] Counsel thereafter filed a Response to the Second Show Cause Order on November 18, using her own electronic signature, and stated:

> 4. The undersigned contacted [Mr.] Howard on Monday, November 4, 2019 to discuss the matter with him and advised that per her electronic calendar had conflicts on November 7, 2019;
>
> 5. The undersigned and [Mr.] Howard agreed that he would appear on her behalf regarding the show cause order;
>
> 6. Having retained counsel to represent her in the matter, she did not believe that it would be required of her to call chambers to notify them she would not be personally appearing, nor require the filing in the record any information regarding that conflict;
>
> …
>
> [10.m.] [T]he undersigned, having been out of her office for two lengthy period [*sic*] from September 26, 2019 through October 12, 2019 and October 26, 2019

---

[6] The Court does not find that Mr. Howard intentionally deceived the Court. The record suggests, in fact, that Mr. Howard learned at some point that Counsel made a misrepresentation and, by requesting the opportunity to file a supplement to Counsel's Response, attempted to provide truthful information to the Court to correct the record.

and November 3, 2019, had at prior appearances advised the Perry District Court
of her upcoming absences and requested hearings to be set on dates after her
return;

[10.n.] In addition, the undersigned had become aware that the Perry District
Court had, during her absence, continued hearings that had arisen in her cases to
the date in question, resulting in the conflict;

[10.o.] The undersigned needs to maintain her standing in these cases since it has
become and will continue to be the majority of her income[.]

[Response at ¶¶ 4, 5, 6, 10.]  Then, on November 21, Counsel appeared before the Court and

stated on the record that she felt she needed to be in Perry District Court for hearings on

November 7.  In sum, Counsel represented to the Court multiple times that she was committed to

attend hearings in Perry District Court on November 7.

But these representations were false.  On January 9, 2020, before the evidentiary hearing,

the parties (including Counsel) submitted a stipulation stating:

[Counsel] frequently represents juveniles and indigent clients in Perry District
Court in "confidential cases," and she did so on Wednesday, November 6, 2019.
There were no confidential cases on the docket in Perry District Court on
Thursday, November 7, 2019, and there were no other cases requiring [Counsel]
to be in attendance in Perry District Court on Thursday, November 7, 2019.

[ECF No. 156 at ¶ 39.]  On that same date, through her attorney, Counsel tendered another

explanation for her failure to appear:

once [Counsel] discovered that the Court had issued its Show Cause Order,
[Counsel] contacted the undersigned and asked him to appear on her behalf at the
scheduled hearing. …  She did not realize that the Court considered that her
appearance through counsel to be inappropriate [*sic*] and had just gotten back in
town knowing that she had a significant number of cases that week in Perry
District Court.  In the rush to address all of the issues she faced upon return to
work, she mistakenly calendared the Show Cause hearing for Wednesday and
believed that the conflict precluded her appearance in Lexington but did not want
to request a continuance which, in hindsight, may have been the better choice.

12

[ECF No. 160 at 4.]  Finally, Trustee advised the Court at a hearing on January 16, 2020, that her office confirmed in late November 2019 that there were no "confidential cases" scheduled for November 7 in which Counsel was required to appear—a fact that Counsel ultimately admitted only after she made misrepresentations to the Court on November 7 (through her attorney), November 18 (in her Response), and November 21 (in person).

Counsel contends that "[a]t no point has [she] taken any action in this case to try to deceive the Court or the Trustee or the Taulbees."  [*Id.*]  The Court, having considered the evidence, including Counsel's own testimony, finds this statement to be untrue.  Counsel knew that she was not in Perry District Court on November 7 when she made multiple misrepresentations, herself or through her attorney, about her purported inability to appear before the Court when ordered to do so.  Based on the record, including the Court's observations of Counsel's demeanor and credibility at the February 25 evidentiary hearing, the Court finds that Counsel perpetuated a false representation about her ability to appear before the Court until she could no longer do so—and then she attempted to manufacture a new story to create a plausible excuse.  Counsel's misrepresentations of fact regarding her failure to appear before the Court in person on November 7 in response to the Show Cause Order violated Bankruptcy Rule 9011(b) in addition to her ethical duty of candor.

## IV.    Applicable Ethics Rules

The United States District Court for the Eastern District of Kentucky, by Local Rule 83.3, has determined that the Kentucky Supreme Court Rules govern attorneys practicing before courts in this District, including this Court.  *See also In re Denny*, 2018 Bankr. LEXIS 1540, at *17 (noting that federal courts in Kentucky apply the Kentucky Supreme Court Rules governing

13

professional conduct).  Several Kentucky Supreme Court Rules are implicated based on the

conduct described above, including (but not limited to) the following:

### SCR 3.130(1.1) Competence

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

### SCR 3.130(1.2) Scope of representation and allocation of authority between client and lawyer

(a) Subject to paragraphs (c) and (d) [not applicable here], a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued.  A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation….

### SCR 3.130(1.3) Diligence

A lawyer shall act with reasonable diligence and promptness in representing a client.

### SCR 3.130(1.16) Declining or terminating representation

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

…

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client….

(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

### SCR 3.130(3.1) Meritorious claims and contentions

A lawyer shall not knowingly bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law….

### SCR 3.130(3.3) Candor toward the tribunal

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; …

…

(c) The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6. …

### SCR 3.130(4.1) Truthfulness in statements to others

In the course of representing a client a lawyer:

(a) shall not knowingly make a false statement of material fact or law to a third person; and

(b) if a false statement of material fact or law has been made, shall take reasonable remedial measures to avoid assisting a fraudulent or criminal act by a client including, if necessary, disclosure of a material fact, unless prohibited by Rule 1.6.

The Court finds that Counsel's conduct in this case, as detailed herein, violated these Kentucky Supreme Court Rules.  An investigation by the Kentucky Bar Association is warranted to address Counsel's violation of these Rules and her fitness to practice law in the Commonwealth of Kentucky.

## V.    The *Bellamy* Order and Counsel's Personal Issues

To explain certain of her failures as counsel for Debtors in this case, Counsel references an agreed order entered in *In re Bellamy* on July 22, 2019 [Ch. 13 Case No. 14-51404, ECF No. 78 (the "*Bellamy* Order")].  The *Bellamy* Order resolved a motion for sanctions filed against

Counsel by UST in 16 procedurally consolidated cases in which UST generally alleged that

Counsel's fee practices in multiple chapter 13 cases violated § 526 and § 528 (setting forth

obligations attorneys must satisfy as "debt relief agencies"); Bankruptcy Rule 2016 and § 329

(requiring disclosure of attorney compensation related to bankruptcy services rendered or to be

rendered); and § 329 and § 526 (regarding adequacy of representation).  [Ch. 13 Case No. 14-

51404, ECF No. 49.[7]]  The terms of the *Bellamy* Order, *inter alia*, allowed Counsel to

"voluntarily retire" from handling bankruptcy cases in the Eastern District of Kentucky without

any finding of wrongdoing.

Counsel has cited the *Bellamy* Order to explain why she failed to properly handle the

conversion of Debtors' case and why she failed to file a response to the Court's October 23, 2019

Show Cause Order.  The *Bellamy* Order is relevant herein, but not for the reasons Counsel

suggests.  It does not excuse Counsel's misconduct in Debtors' case.  Instead, the *Bellamy*

Order—as well as an order entered in a different case in 2016[8]—establishes that Counsel

repeatedly has been subject to investigation and sanctions based on her noncompliance with the

Bankruptcy Code and her professional obligations in bankruptcy cases.

---

[7] Although no party introduced UST's motion for sanctions in *Bellamy* at the evidentiary hearing, the Court may take judicial notice of records in its own docket.  *See* FED. R. EVID. 201, *made applicable by* FED. R. BANKR. P. 9017; *see also HIJ Indus. v. Roy (In re Roy)*, 565 B.R. 829, 827 n.4 (Bankr. E.D. Ky. 2017) ("Federal Rule of Evidence 201 permits the Court to take judicial notice of its own court records. *See, e.g., In re Ludwick*, 185 B.R. 238, 240 n.3 (W.D. Mich. 1995).").  Here, the motion for sanctions in *Bellamy* puts the *Bellamy* Order in context. Further, the motion for sanctions in *Bellamy* also contained information regarding Counsel's agreement to enter into a different Consent Order and Injunction with UST in 2016 "to rectify issues with her own internal record keeping and reporting of fees to the Court, similar to the ones outlined above."  [Ch. 13 Case No. 14-51404, ECF No. 49 ¶¶ 26-29.]  UST explained why it asked the bankruptcy court to issue disciplinary sanctions in *Bellamy* as follows: "Because so many problems continue to occur after [UST] has addressed reporting, record keeping, and quality of representation issues with [Counsel] in the past 2-3 years," UST "believes that more severe sanctions are necessary to prevent further harm to the clients or misrepresentations to the Court."  [*Id*. at ¶ 30.]
[8] *See In re Bush*, Ch. 7 Case No. 14-51370, ECF No. 40 ("Consent Order and Injunction") dated July 11, 2016.  As previously noted, Federal Rule of Evidence 201 permits the Court to take judicial notice of records in its own docket.

The July 2019 *Bellamy* Order did not prevent Counsel from promptly and properly converting Debtors' case, or from disclosing compensation she received to do so, in January 2019.  It did not cause Counsel to abandon Debtors between the initial dismissal of their case on January 29 and early April 2019, when she made her first unsuccessful attempt to convert their case.  It did not prevent Counsel from refunding Debtors' $500 and directing them to seek another attorney when she determined after the *Bellamy* Order's entry that she could not or would not be able to reopen their case, have the dismissal set aside, and convert the case to one under chapter 7.

In addition, the *Bellamy* Order did not cause Counsel to fail to attend the November 7 Show Cause hearing.  It also did not lead her to repeatedly misrepresent to the Court why she could not appear on the date set for that hearing.

Counsel's references to the *Bellamy* Order reflect that she prefers to make excuses for her misconduct rather than own up to it.  She buttressed the Court's impression by the cavalier attitude, indignation, and exasperation reflected in her courtroom testimony on February 25.  The Court found her testimony regarding the "confusion" of Ms. Taulbee and others, her "miscalendaring" of the hearing on the Show Cause Order, and her "concern" about violating the *Bellamy* Order, to be wholly incredible.

Finally, Counsel also attempted to excuse her conduct on events in her personal life.  Her mother became ill in October 2018 and passed away in April 2019.  Counsel testified that she served as her mother's primary caregiver.  Counsel also alluded to general "health problems" she may have experienced during this period.  She testified that these matters took "priority" over her law practice.

17

Life happens.  Such events cannot and do not excuse an attorney's abandonment of her clients for an extended period.  Ethics rules clearly direct counsel to seek withdrawal from a representation in such circumstances.  *See* Ky. SCR 3.130 (1.16)(a)(2), (c), (d).  For 11 months from January to November 2019, Counsel claims personal life events impeded her from completing the simple task of converting Debtors' case.  Her failure to seek withdrawal from the representation and clearly communicate this to her clients is perhaps her most egregious violation.

The power imbalance between a client and her attorney is acutely pronounced in consumer debtor representation.  A consumer debtor must rely on counsel to navigate a series of legal hurdles while the debtor often deals with life-altering challenges such as major illness, divorce, and job loss.  It is because "life happens" that debtors seek bankruptcy relief.  Here, Ms. Taulbee became unemployed, ultimately lost her car, and time and again consulted with and relied on Counsel's advice and guidance.  Counsel's personal stressors were no more important or significant than what Debtors faced.  In our legal system, ethical rules require an attorney to step out of a representation in the face of unmanageable physical or mental conditions which prevent them from providing legal services competently.  Counsel's personal issues do not excuse her conduct in this case.

## VI.    The Court's Authority to Sanction

Given Counsel's improper conduct, the Court considers its authority to issue sanctions. First, the Court may impose sanctions under § 105(a).  *Law v. Siegel*, 571 U.S. 415, 420 (2014) ("A bankruptcy court has statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code") (quoting 11

U.S.C. § 105(a)).  Second, the Court may enjoin conduct by an attorney pursuant to § 526(c)(5),

which provides:

> Notwithstanding any other provision of Federal law and in addition to any other
> remedy provided under Federal or State law, if the court, on its own motion or on
> the motion of the United States trustee or the debtor, finds that a person
> intentionally violated this section, or engaged in a clear and consistent pattern or
> practice of violating this section, the court may—
>
> (A) enjoin the violation of such section; or
>
> (B) impose an appropriate civil penalty against such person.

11 U.S.C. § 526(c)(5).  Third, Bankruptcy Rule 9011(c) permits the Court to issue an appropriate

sanction upon the attorney when warranted, including the issuance of a nonmonetary directive,

following a show cause hearing.  Finally, the federal courts have the inherent power to sanction

to maintain order in their own cases.  *Knowles Bldg. Co. v. Zinni (In re Zinni)*, 261 B.R. 196, 203

(B.A.P. 6th Cir. 2001) ("federal courts, including the bankruptcy court, have the inherent power

to impose sanctions on a scope broader than that of Bankruptcy Rule 9011, including monetary

sanctions") (citation omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)

(recognizing the inherent power of the federal courts to sanction).

When a court determines that sanctions are warranted, it must attempt to match the

sanctions to the misconduct.  *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d

472, 478 (6th Cir. 1996) ("When a court metes out a sanction, it must exercise such power with

restraint and discretion.  The sanction levied must thus be commensurate with the egregiousness

of the conduct.") (citation omitted).  In addition,

> the test for imposing Rule 9011 sanctions is whether the individual's conduct was
> reasonable under the circumstances.  *See Hartleip v. McNeilab, Inc.*, 83 F.3d 767,
> 778 (6th Cir. 1996) (which addresses, among other issues, the proper time to
> impose Rule 11 sanctions).  In applying this test, the bankruptcy court "is not to
> use the benefit of hindsight but 'should test the signer's conduct by inquiring what

19

was reasonable to believe at the time the [pertinent filing] was submitted.'"
*McGhee v. Sanilac County*, 934 F.2d 89, 93 (6th Cir. 1991) (quoting *INVST
Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 401 (6th
Cir.), *cert. denied*, 484 U.S. 927, 98 L. Ed. 2d 251, 108 S. Ct. 291 (1991)) (inner
quotation omitted).

*Id.* at 481.

## CONCLUSION

Based on these findings of fact and conclusions of law, clear and convincing evidence

establishes that Counsel engaged in misconduct that was not reasonable under the circumstances.

Counsel made multiple substantive and procedural errors as counsel for Debtors.  She has been

subject to sanctions on other occasions for similar conduct, demonstrating either an inability or

an unwillingness to improve her conduct.  In addition, Counsel made multiple intentional

misrepresentations to the Court.

Counsel has, through submissions from her counsel and in her own words, represented to

the Court that she has no intention of participating in bankruptcy cases in the future in this

District in any way.  The *Bellamy* Order already contains restrictions on her ability to practice

bankruptcy cases in this District.  But the Court finds it necessary to expand upon the *Bellamy*

Order and concludes that severe sanctions are necessary to protect the integrity of the bankruptcy

system.  Accordingly, under the Court's authority cited above, the following sanctions are

imposed:

1.    Charlotte Darlene Johnson is permanently prohibited from practice before the

United States Bankruptcy Court for the Eastern District of Kentucky.  Reciprocal sanctions are

recommended in any other court in which Counsel practices.

2.    Charlotte Darlene Johnson is permanently enjoined from participating in any

fashion in the representation of clients in bankruptcy cases.  She shall not act as a petition

20

preparer.  She shall not draft materials for any case participant or for another attorney to sign and

file.  She shall not counsel clients, or provide advice to other attorneys, regarding bankruptcy-

related matters.

       3.     The Clerk is hereby directed to provide a copy of this Memorandum Opinion and

Order to the Kentucky Bar Association, Office of Bar Counsel, 514 West Main Street, Frankfort,

KY 40601-1812.

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and
electronically entered by the Clerk in the official record of this case.**



**Signed By:**
**_Tracey N. Wise_**
**Bankruptcy Judge**
**Dated: Thursday, April 2, 2020**
   **(tnw)**